## Case No. 9,126.

### MARSHALL v. CRAWFORD.

[4 Sawy. 37.] [1]

District Court, D. California. Aug. 12, 1876.

SEAMEN'S WAGES—MASTER—RETURN TO PORT—ERROR IN JUDGMENT—BOARD OF WIFE AND CHILD.

1. Where the master was compelled, by want of provisions, to return to his home port, and the insufficient supply was caused by an error of judgment, committed in the supposed interest of his owners, held, that under the circumstances, the error was not of so gross a character as to make the master personally responsible for its consequences.

2. Where the master claimed the gratuitous privilege of taking with him on the voyage his wife and child, held, that he must show a distinct understanding and definite agreement with the owners on the subject.

[This was a libel by George Marshall against Andrew Crawford.]

Jno. M. Coghlan, for libellant.

E. W. McGraw, for respondent.

HOFFMAN, District Judge. Suit for wages as master of the bark Legal Tender. The answer admits the services of the libellants, and the earning of the wages claimed. The defense set up is:

1. The willful disobedience by the master of the owners' orders. The answer alleges that the libellant, having been ordered to proceed from Guaymas to Humboldt Bay, arrived off the latter port on or about March 30, 1876, and there beat about until April 4, without making any attempt to enter the bay, and without any valid excuse for not doing so; and that. on said April 4, the libellant. willfully disobeying the orders of respondent, instead of entering the bay and there procuring a cargo of lumber, squared away for San Francisco, where he arrived April 6, 1876.

The proof shows that the master used every effort, and exhibited proper seamanship while doing so, to enter the bay, but was prevented by adverse winds. It also is clearly established that his sole reason for abandoning further efforts was the almost entire want of provisions. There can be no doubt that his return to San Francisco was rendered absolutely necessary by this circumstance. To have remained longer would have been a criminal breach of his duty to his crew.

The real point of the defense is that the insufficient supply of provisions was due to the master's neglect and carelessness.

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

It is not denied that he was amply provided with funds to obtain, at Guaymas, all the provisions he required.

There can be no doubt that the libellant made a mistake in not taking in more provisions, but I hardly think the mistake was of so gross a character as to render him personally responsible for its consequences. The subject was confided to his discretion, and his motive in stinting the supply was to effect a saving for his owners, the price of provisions at Guaymas being much higher than at this port.

The average length of voyages from Guaymas to San Francisco, is from thirty to thirty-five days. A voyage from Guaymas to Humboldt Bay is, perhaps, on the average, five or ten days longer. Several experienced shipmasters testify that for such a voyage they would take in two months' supply of provisions. But they state that there is no fixed rate, that they would be so governed by circumstances. The Legal Tender's provisions gave out on the fifty-third day.

The fidelity and general capacity of the master are not disputed. He has been in the respondent's employ for several years. I think that a mistake of this character committed in the supposed interest of the owner would not be held by any jury to be such negligence as to render the master liable for damages. If he would not be so liable the respondent cannot recoup or set off in this action such damages against the master's claim.

2. The respondent also claims a deduction from the master's wages, on account of board furnished to his wife and child, who accompanied the master on his voyage. There seems to have been no agreement or definite understanding between the master and respondent on the subject. The latter knew that the master's wife was to accompany him. He does not appear to have either given or withheld his consent in any very definite manner. Certainly he did not agree that she should be maintained at the ship's expense during the entire voyage. There was probably no intention on the respondent's part at that time to make any charge against the master, but he did not expressly renounce the right to do so. And probably the master expected, so far as he had any definite expectation on the subject, to pay the demand in case, contrary to his anticipations, a demand was made. He expressed his willingness to do so after his arrival, provided the balance of his wages was paid, and though his offer may have been merely intended as a mode of settling and compromising the dispute, yet I am inclined to think that it ought to be viewed as a recognition on the part of the master that he had no absolute right to insist upon receiving from the owner so considerable a gratuity. He may have considered the respondent's demand unhandsome, but he does not appear to have resisted it as absolutely unjust and contrary to agreement.

Under all the circumstances I have concluded to allow the deduction. If gratuitous privileges of this nature, involving considerable expense to owners, are claimed by masters, they should come to a distinct understanding on the subject and put the agreement into some definite form. I shall allow a deduction of $125 on this account; for the balance of his wages a decree must be entered.